Entered on Docket
August 05, 2013
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: August 2, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 09-32219DM
LOMBARD FLATS, LLC,                )
                                   )
                        Debtor.    ) Chapter 11
_____)
```

MEMORANDUM DECISION ON MOTION FOR
ORDER OF CONTEMPT

I. INTRODUCTION

The reorganized debtor has moved for an order of contempt against a creditor and his attorney for obtaining a judgment against it after confirmation of a Chapter 11 plan. In subsequent submissions the debtor has indicated that it will not press for money damages if the offending judgment is vacated. At a hearing on June 14, 2013, the parties agreed to submit the matter for decision on the basis of the current record without an adversary proceeding.

For the reasons stated below, the court will grant the motion, declare the judgment void and direct that the creditor take steps to vacate the judgment within thirty days. If that is accomplished the matter will be closed; if not, debtor will be entitled to seek appropriate contempt remedies.

## II. DISCUSSION[1]

Debtor's principal is Martin Eng ("Eng"). From 1985 through January 2009, Eng owned the building at 949-953 Lombard, San Francisco ("Property"). In January 2009, Eng transferred the Property to Lombard Flats, LLC ("Debtor").

Eng allegedly owes more than $1 million to Cheuk Tin Yan ("Cheuk"), who has been represented off and on by his son Demas Yan ("Demas"). On September 12, 2012, Cheuk filed a lawsuit in the San Francisco Superior Court (Action No. CGC-12-524745) for "Conspiracy on Fraudulent Conveyances" against Eng, Debtor, and others based on the three promissory notes signed by Eng in 2007 and 2008, while he owned the Property.

Cheuk alleged that Eng transferred the title to the Property without consideration and encumbered it with liens and leases not supported by consideration. Cheuk sought (among other things) a judgment on the promissory notes, a judgment lien on the Property, expungement of the post-2008 leases and deeds of trust, and (presumably, though not specifically prayed for) avoidance of the transfer of title to Debtor as a fraudulent (conveyance) transfer. In a subsequent pleading filed in state court, Demas sought for Cheuk a judgment against Debtor for "conspiracy for fraudulent transfer." On May 2, 2013, Cheuk obtained a Judgment By Default against Debtor in the sum of $960,299.55 (the "Judgment"). The so-called fraudulent transfer was not avoided.

Debtor filed this case on August 3, 2009, and obtained an order confirming its plan on July 19, 2010. The court entered a

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

Case: 09-32219    Doc# 151    Filed: 08/02/13    Entered: 08/05/13 10:11:44    Page 2 of 7

final decree on May 23, 2011, and the case was closed on June 3, 2011. It was reopened on May 1, 2013, for limited purposes unrelated to the present motion, but while reopened, Debtor filed the instant motion seeking an order of contempt. A predicate to any contempt order is the determination that the Judgment against debtor is void because of debtor's discharge and the impact of 11 U.S.C. § 524.

Debtor did not list Cheuk or Demas as creditors in its schedules. Eng admits that he did not inform Debtor's counsel, Ms. Chipser, about Cheuk's claims as he did not believe them to be claims against Debtor. (See paragraph 9 of Eng's initial declaration, Dkt. No. 137). He admits that no notice of the case was given to Cheuk. He also states that "I thought I was doing [Cheuk] a favor by not listing him in this case since he might get almost nothing with or without the bankruptcy. I was concerned that [Cheuk] might ruin the bankruptcy as his son threatened." (See paragraph 11 of Eng's initial declaration).

A threshold question for the court is whether Cheuk or Demas, his attorney, had knowledge of the Debtor's Chapter 11 case. Demas did, and his knowledge is therefore imputed to Cheuk.

Demas, in the initial Supplemental Memorandum filed June 22, 2013, in opposition to Debtor's Motion, complains about a denial of due process, citing Supreme Court and Ninth Circuit authority. But those cases deal with known claims, not claims the claimant aided in concealing. For example, in Levin v. Maya Constr. (In Maya Constr. Co.) 78 F.3d 1395 (9th Cir. 1996) the court emphasizes the need for formal notice to be given to a "known contingent creditor." Similarly, it was a "known creditor" whose

-3-

general awareness of a pending Chapter 11 case was insufficient to satisfy due process in Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.) 534 F.3d 76 (1st Cir. 2008).

Here, Cheuk's theory of liability of Debtor, and the essence of the Judgment recently obtained against it, is that Eng made, or conspired with Debtor to make, a fraudulent transfer to Debtor, in derogation of Cheuk's rights as a creditor of Eng. The evidence is unmistakable, however, that Eng did not understand that Cheuk had a fraudulent transfer claim against Debtor. In fact, Eng did not know what a fraudulent conveyance was. See declaration of Martin Eng (Docket No. 137, ¶ 9).

The parties disagree about one related issue. Exhibit 5 to Eng's original declaration is an e-mail he sent on August 18, 2009, after Debtor's Chapter 11 filing, asking Demas if he could transfer the deeds (presumably of the Property) to him but expressing concerns about a fraudulent transfer. Demas, in turn, refers to "Romero" who "has done good research and has proof of all the fraud you [Eng] committed." The "Romero" refers to attorney Mark Romeo, who filed a motion for relief from stay on behalf of a client in Debtor's case (Dkt. No. 16). Eng says that proves that Demas knew of the Chapter 11 filing only days after the case was commenced; Demas puts the matter in issue by contending that his reference to Mr. Romeo had to do with state court litigation against Eng that was pending. The court makes no determination of this disputed fact.

Eng also contends in a supplemental declaration that in 2007 Demas gave him legal advice to put assets into a limited liability company (Dkt. No. 147). He supports that contention with an e-

-4-

mail dated October 7, 2007, wherein Demas explains the advantages of holding assets in a limited liability company, including shielding those assets from creditors.  But Eng assumes too much from that proof.  Transferring assets to an LLC is not wrongful if it is not a fraud on creditors.  There is no way for the court to know whether a transfer in 2007 would have been a fraudulent transfer.

Demas' knowledge of Debtor's Chapter 11 case a few months later, however, is established by uncontroverted evidence.  Specifically, Eng refers in his initial declaration to Exhibit 11, namely an e-mail he sent to Demas on May 22, 2010, asking, "How can you help in a BK plan approval - U.S. Trustee opposing."  A review of the case docket shows that on May 21, 2010, the Untied States Trustee objected to confirmation of the plan Eng had caused Debtor to file in this case.  Demas has not denied receipt of that e-mail.  All he can say that approaches contradicting it is that he had no knowledge of the bankruptcy "until late in 2010."  (Dkt. No. 143-3, p. 1.)

From the foregoing the court finds that Demas had knowledge of Debtor's Chapter 11 case no later than May 22, 2010, and that, on behalf of his father, Cheuk, he was attempting to obtain title to the Property for himself (no doubt as a separate fraudulent transfer).

In his Memorandum of Points and Authorities (Docket No. 143-1) Demas refers to an Eng e-mail wherein he refers to a prospective fraudulent transfer.  But that fraudulent transfer is one that never occurred.  In fact, Eng was referring to Demas' foregoing request that the Property be transferred to him or his

-5-

father, a transfer that was refused. Further, in his Supplemental Declaration, Eng explains the earlier exchange by reciting that he did not know how a fraudulent conveyance operated in a bankruptcy case and that creditors of the transferor could be creditors in the bankruptcy case of the transferee. "Such legal principles would be beyond my understanding at the time. I have come to understand those legal principles now."

One issue that troubles the court is a factual dispute as to whether or not Demas instructed Eng to exclude his father's debt from the Debtor's Chapter 11 filing. In his own declaration, Eng states at paragraph 10 that "Demas Yan told me to file the Lombard Flats Chapter 11 without listing his father's debt. Also, while acting as my lawyer in other matters, Demas Yan convinced me that I was going to lose Lombard and would be liquidated, so I had nothing to lose by not listing his father's debt.

In Demas' declaration in opposition, he states: "I did not tell Eng to file Debtor's bankruptcy without listing creditor's debt." This controverts the following statement made by Eng in his supplemental response:

> Demas ... persuaded Martin Eng, a legally unsophisticated person, not to advise bankruptcy counsel of Yan's claim, so that, later, the lawyer could assert that no notice was received and that the claim was not discharged because formal notice was not given.

What is uncontroverted, however, is Eng's statement in his original declaration at 4:24-27:

> Also, while acting as lawyer in other matters, Demas then convinced me that I was going to lose Lombard and would be liquidated, so I had nothing to lose by not listing his father's debt.

There is a clear factual pattern with the following critical

-6-

ingredients: Eng's personal lawyer, Demas, had knowledge of the Chapter 11 case well before the operative plan that was ultimately confirmed was filed; Demas' knowledge of the case is chargeable to his father and client, Cheuk; Eng did not know of fraudulent transfers generally or that Debtor could be liable as a fraudulent transferee; Demas had a hand in making sure that Debtor did not list Cheuk as a creditor or otherwise disclose the existence of a fraudulent transfer liability.

The authorities cited by Demas in support of his due process argument involve a failure to identify known claims. Where Eng did not know of the existence of a claim when in fact the representative of the claimant did know of the claim and of the underlying bankruptcy, it is sufficient to estop the creditor from claiming a denial of due process when he had much to do with the process of obscuring the existence of the claim.

From the foregoing the court concludes that Debtor's motion is well taken, that the Judgment was obtained in violation of Debtor's discharge under 11 U.S.C. § 1141(d)(1)(a), and thus is void under 11 U.S.C. § 524(a)(1). See <u>Lonestar Security v. Gurrola (In re Gurrola)</u>, 328 B.R. 58 (9th Cir. BAP 2005). Thus, Cheuk, through Demas his attorney, is under an affirmative duty to set aside that void judgment or face contempt. <u>Esknos & Adler PC v. Leetien</u>, 309 F.3d 1210 (9th Cir. 2002).

III. CONCLUSION

The court is concurrently entering an order directing Cheuk and Demas to vacate the Judgment within thirty days or face a renewed motion for contempt.

**END OF MEMORANDUM DECISION**

Case: 09-32219    Doc# 151    Filed: 08/02/13    Entered: 08/05/13 10:11:44    Page 7 of 7