```
DEMAS YAN (SBN 257854)
300 Frank H. Ogawa Plaza, Suite # 218
Oakland, Ca 94612
Phone (415) 867-5797
In Pro Se
```

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>LOMBARD FLATS, LLC,<br>         Debtor. | Case No: 09-32219<br><br>(Chapter 11)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES<br>**IN SUPPORT OF** DEMAS YAN'S MOTION FOR RECONSIDERATION OF ORDER OF CONTEMPT ENTERED ON JANUARY 5, 2015<br><br>Date: Feb. 13, 2015<br>Time: 10:00 A.M.<br>Department: 22 |

BASIS FOR MOTION

Although this motion is captioned as a motion for reconsideration, the argument is that the court lacks subject matter jurisdiction to make the Order. An objection that a federal court lacks subject-matter jurisdiction may be raised by a party at any stage in the litigation, even after trial and the entry of judgment. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Defects in subject matter jurisdiction are nonwaivable. *Detabali v. St. Luke's Hosp.*, 482 F.3d 1199, 1202 (9th Cir. 2007).

# BACKGROUND

Debtor LOMBARD FLATS, LLC was formed as an entity on December 22, 2008. It filed for Chapter 11 bankruptcy less than year later on August 3, 2009. MARTIN ENG, the debtor's principal, had borrowed loans from CHEUK YAN and MEILING FANG ("Lenders"), who assigned the loans for collection to LEGAL RECOVERY, LLC, which filed a collection action in the Superior Court of California, San Francisco County, Case no. CGC 14-542378. DEMAS YAN is the attorney of record for plaintiff in that collection action in which debtor was named as a defendant based on the alter-ego theory. Debtor brought a motion for contempt against Yan for violation of the automatic stay on December 19, 2014, and the court granted debtor's motion and its order granting the motion was entered on January 5, 2015.

## *ALTER EGO* THEORY IS NOT A "CLAIM" UNDER BANKRUPTCY LAW.

In the case *In re Conseco Life Ins. Co. Cost of Ins. Litig.* ("Conseco"), 2005 U.S. Dist. LEXIS 32375 (C.D. Cal., Apr. 13, 2005), a copy of which is attached as Exhibit A, the question posed was, where "Plaintiff's have sued the fourth-tier subsidiary of a large conglomerate, alleging breach of contract. May they also assert a claim of alter ego liability against the subsidiary's ultimate parent company, when many of the facts supporting the alter ego allegations occurred before that parent company obtained a "Bar Order" upon being discharged from bankruptcy?" *Id.* at *3. The Conseco court found the answer to be yes. In arriving at its answer, the Conseco court stated that the equitable *alter ego* doctrine merely helps identify which parties ought to be held liable for the misconduct at issue, and that it is not an independent claim; and the court found that *alter ego* allegations do not constitute a claim for bankruptcy purposes. *Id.* at *15-17. The court found that the legal standard to apply is the "fair contemplation test" and that the question to ask is whether plaintiff could have contemplated claims against the debtor on an alter ego theory before the bar date. If not, such claims are not barred. *Id.* at *19-20. Based on that standard, the Conseco court found that the plaintiffs in that case could not have "fairly contemplated" claim of alter-ego liability against debtor and thus the claims were not discharged. The plaintiffs in Conseco also argued, in the alternative, that

- 2 -

debtor's failure to provide plaintiffs with actual notice of its bankruptcy proceedings prevents discharge, but the Conseco court did not reach that question in its decision.

Here, there is no showing by debtor Lombard Flats, LLC that the private lenders could have contemplated claims against the debtor on an alter ego theory during its bankruptcy. The burden is on the debtor seeking to enforce an injunction created by a confirmed Chapter 11 plan to make such a showing. See *In re Arch Wireless, Inc.*, 534 F.3d 76, 82-83 (1st Cir 2008). Here in debtor's bankruptcy case, the final decree closing the bankruptcy case was entered on May 23, 2011. (Doc. #124.) The overt indication of alter ego relationship between debtor and Marin Eng occurred when Eng caused a deed of trust in the amount of $580,000 to be recorded against property of debtor whereby Eng and numerous other entities controlled by Eng were named as beneficiary. That deed of trust was recorded in the San Francisco Recording Office as Doc-2012-I347181-00 on January 31, 2012. So even if lenders had instantaneous knowledge of this recording of the deed of trust, it was after the closing of debtor's bankruptcy case. Thus based on the "fair contemplation test", lenders' claim of alter ego is not discharged by debtor's bankruptcy.

ALTERNATIVELY, DEBTOR'S FAILURE TO PROVIDE ACTUAL NOTICE OF ITS BANKRUPTCY PROCEEDINGS PREVENTS DISCHARGE.

It is undisputed that debtor did not provide lenders with formal notices of debtor's bankruptcy. Lenders have no duty to come forward with a claim even if they had knowledge of debtor's bankruptcy. It is settled law that a creditor's general awareness of a pending corporate Chapter 11 bankruptcy is insufficient to satisfy the requirements of due process. See *Paging Network, Inc. v. Nationwide Paging, Inc.*, 534 F.3d 76, 86 (1st Cir. Mass. 2008); *Monster Content, LLC v. Homes.com, Inc.*, 331 B.R. 438, 443 (N.D. Cal. 2005)(claim not discharged because the debtor failed to provide the creditor with any notice of the proposed plan of reorganization; any notice of the claims bar date; or any notice of the motion, hearing date or order of confirmation). A creditor who has not received formal notice of bankruptcy has no duty to inject himself into a

debtor's bankruptcy even if creditor had knowledge of the bankruptcy. *In re Maya Const. Co.*, 78 F.3d 1395, 1399 (9th Cir. 1996).

So even if lenders had knowledge of debtor's bankruptcy and could have contemplated alter-ego claims against debtor prior to the bar date, lenders had no duty to inject themselves into debtor's bankruptcy absent formal notices of debtor's bankruptcy.

CONCLUSION

For the reasons stated above, lenders' claim of alter-ego liability against debtor is either not subject to debtor's bankruptcy discharge or was not discharged due to lack of formal notices. Such claim of alter ego liability is the personal property of lenders, which had been assigned for collection in the state court action noted above. This court lacks subject matter jurisdiction over that claim and over that state court action. The Order entered on January 5, 2015 should be vacated.

Respectfully submitted,
/s/Demas Yan

# EXHIBIT A





Analysis
As of: Jan 10, 2015

In re: CONSECO LIFE INSURANCE CO. COST OF INSURANCE LITIGATION,
This document relates to: ALL ACTIONS

MDL NO 04-1610-AHM (Mcx)

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA, WESTERN DIVISION

*2005 U.S. Dist. LEXIS 32375*

April 13, 2005, Decided
April 13, 2005, Filed

**SUBSEQUENT HISTORY:** Class certification granted by, in part *In re Conseco Life Ins. Co. Cost of Ins. Litig., 2005 U.S. Dist. LEXIS 48569 (C.D. Cal., Apr. 26, 2005)*
Certification denied by *In re Conseco Life Ins. Cost of Ins. Litig., 2005 U.S. Dist. LEXIS 45538 (C.D. Cal., May 31, 2005)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff insured filed an action against defendant insured for breach of contract.

**OVERVIEW:** The insured held three policies with the insurer. The insurer's parent company had gone through a bankruptcy proceeding. The question for the court was whether the insured could also assert a claim of alter ego liability against the subsidiary's ultimate parent company, when many of the facts supporting the alter ego allegations occurred before that parent company obtained a "Bar Order" upon being discharged from bankruptcy. The insured and the new parent company argued that for bankruptcy law purposes, a contingent breach of contract claim arose at the time of contracting, not at the time of the alleged breach. Therefore, they contended, the insured's breach of contract claims against the insurer arose before the Bar Order and were therefore discharged by the Bar Order. The court held that the insured could not have reasonably contemplated a breach of contract claim against the parent company based on an alter ego theory arising from an alleged post-Bar Order breach of a contract by their insurance carrier, a breach that had not yet occurred. Therefore, the insured's claims against the new parent company were not discharged.

**OUTCOME:** The court granted the insured's motion in limine.

**CORE TERMS:** alter ego, breach of contract, subsidiary, notice, life insurance policy, policyholder, discharged, bankruptcy proceeding, contemplation, causes of action, monthly, confirmation, contemplate, undisputed, bankruptcy law,

Case: 09-32219    Doc# 191-1    Filed: 01/10/15    Entered: 01/10/15 21:09:01    Page 6 of 15

equity interests, right to payment, pre-petition, contingent, equitable, accumulation, universal, coverage, insurance policies, balance sheet, contingent claim, contracting parties, reorganization, reorganized, elimination

**LexisNexis(R) Headnotes**

*Bankruptcy Law > Claims > Types > Definitions*
[HN1] In determining what constitutes a claim for bankruptcy purposes and when it arises, conflict and confusion are almost inevitable. *11 U.S.C.S. § 101(5)* defines claim broadly as: (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured. (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. According to the United States Court of Appeals for the Ninth Circuit, this broadest possible definition of claim is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > General Overview*
[HN2] There are two essential elements of an alter ego claim: (1) a finding that there is such unity of interest and ownership that the separate personalities of the corporation and the individual or defendant corporation no longer exist, and (2) that the failure to disregard the corporation would result in fraud or injustice. The equitable alter ego doctrine merely helps identify which parties ought to be held liable for the misconduct at issue. It does not create an independent cause of action.

*Bankruptcy Law > Discharge & Dischargeability > General Overview*
[HN3] Although bankruptcy law does not govern whether a breach of contract claim has been stated, it does govern when such a claim arises under the Bankruptcy Code for purposes of determining discharge. Unfortunately, there is no dispositive Supreme Court opinion articulating the legal standard for determining when a claim arises. Courts of Appeal have articulated several different tests, none of which covers every possible claim or dispute. There are at least four different tests, including the state law accrual or right to payment test. the relationship test; the time of the debtor's conduct test; and. the fair contemplation test.

*Contracts Law > Consideration*
[HN4] Ordinarily, a cause of action for breach of contract accrues at the time of breach.

*Contracts Law > Consideration*
[HN5] Until a breach occurs, a contracting party has no reason to investigate who, if anyone, might possibly be the alter ego of the party with whom he has contracted. To hold that contracting parties can fairly contemplate a claim against a debtor-in-bankruptcy who, as alter ego, controlled the party with whom they contracted would invite parties to assert highly speculative, future claims in bankruptcy proceedings across the nation.

*Bankruptcy Law > General Overview*
[HN6] Although bankruptcy is primarily designed to settle claims of all those who know of their claims against the debtor, including contingent claims, and to provide the debtor with a fresh start, it does not do so at the expense of potential creditors who could not have known about their rights.

*Bankruptcy Law > General Overview*

[HN7] The protections afforded by discharges from bankruptcy are not meant to extend to viable claims against debtors who did not provide notice to claimants.

**COUNSEL:** [*1] For Conseco Life Insurance Company, Cost of Insurance Litigation, In Re: Brent L Caslin, Robyn Eileen Bladow, Timothy G Majors, Kirkland & Ellis, Los Angeles, CA.

For Gomer, Plaintiff: Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For Steven Rose, Dr, Plaintiff: Andrew S Friedman, Bonnett Fairbourn Friedman & Balint, Phoenix, AZ; Blake M Harper, Hulett Harper Stewart, San Diego, CA.

For Edwin Jacob Garn, Senator, Plaintiff: Andrew S Friedman Bonnett Fairbourn Friedman & Balint, Phoenix, AZ; Blake M Harper, Hulett Harper Stewart, San Diego, CA; Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For David Barton, Plaintiff: Christopher Casper, James Hoyer Newcomer & Smiljanich, Tampa, FL; John J Stoia, Jr, Lerach Coughlin Stoia Geller Rudman and Robbins, San Diego, CA; John A Yanchunis, James Hoyer Newcomer & Smiljanich, Tampa, FL; Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For Glucksman, Plaintiff: Leigh R Lasky, Norman Rifkind, Lasky & Rifkind, Chicago, IL; Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For King, Plaintiff: Bert S Sakuda, Cronin Fried Sekiya Kekina and Fairbanks, [*2] Honolulu, HW; Marvin H Schiff, Schiff and Dickson, leveland, OH; Robert R Sparks, Ron Parry, Parry Deering Futscher and Sparks, Covington, KY; Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For Michael S Kuhn, Plaintiff: Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For Dan Frankel, Plaintiff: Bruce I Favish, National class member, Bruce I Favish Law Offices, Pacific Palisades, CA; David B Rodes, Goldberg Persky and White, Pittsburgh, PA; Howard M Louik, Howard M Louik Law Offices, Pittsburgh, PA.

For Pricewaterhouse Coopers LLP, Movant: Jeremy Glenn Suiter, Latham & Watkins, Los Angeles, CA.

For Conseco Life Insurance Company, Defendant: Andrew A Kassof, Anup Sathy, James H M Sprayregen, John T Hickey, Jr, Kevin T Van Wart, Roger J Higgins, Kirkland & Ellis, Chicago, IL; Brent L Caslin, Gllian N Rattray, Michael S McCauley, Kirkland & Ellis, Los Angeles, CA; Robyn Eileen Bladow, Timothy G Majors, Kirkland & Ellis, Los Angeles, CA; Timothy P Dillon, Timothy P Dillon Law Offices, Laguna Beach, CA.

For Judith A Levine, Sidney H Levine, Intervenors: David J Gallo, David J Gallo Law Offices, Del Mar, CA.

**JUDGES:** A. Howard Matz, [*3] United States District Judge.

**OPINION BY:** A. Howard Matz

**OPINION**

ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE DISCHARGE DEFENSE

I.

**INTRODUCTION**

Plaintiff's have sued the fourth-tier subsidiary of a large conglomerate, alleging breach of contract. May they also assert a claim of *alter ego* liability against the subsidiary's ultimate parent company, when many of the facts supporting the *alter ego* allegations occurred before that parent company obtained a "Bar Order" upon being discharged from

bankruptcy? That is the question in this Multi-District Litigation, but to answer it the Court first must determine just what plaintiffs' claims are and when they arose (seldom an easy question in the context of bankruptcy).

For the reasons that follow, I find that the answer is "yes." That is, plaintiffs' *alter ego* claims in the Consolidated Amended Complaint ("CAC") are not barred by the discharge of Conseco, Inc. from bankruptcy.

## II.

## FACTS

### A. The Parties

Plaintiff Murray Gomer ("Gomer"), 84, is a resident and citizen of the State of California. In or about August 1987, he purchased a Lifestyle universal life insurance policy issued by defendant [*4] Conseco Life Insurance Company ("Conseco Life"). CAC, P 14. Plaintiff Edwin Jacob Garn ("Garn"), 72, is a resident and citizen of the State of Utah. He is or was the owner of three Conseco Life universal life insurance policies. CAC, P 15.

Defendant Conseco Life is an Indiana corporation. Until 1996, Conseco Life was known as Massachusetts General Life Insurance Company ("Massachusetts General"). In or about 1998, Philadelphia Life Insurance Company ("Philadelphia Life") was merged into Conseco Life. CAC, P 16. Both Massachusetts General and Philadelphia Life are now known as Conseco Life. *Id.* Defendant Conseco, Inc. is a holding company and, through a series of subsidiary holding companies, is the owner of 100 percent of the stock of Conseco Life. Id., P 18. Conseco, Inc. went through a bankruptcy proceeding and, for purposes of clarity in this Order, it will be referred to as "Old Conseco" for the period before its discharge and "New Conseco" for the period since its discharge. [1]

> 1  "Old Conseco held 100% of the common equity interests in CIHC, Inc., an intermediate holding company that held 100% of the equity interests in more than twelve companies, including Conseco Life Insurance Company of Texas. Conseco Life Insurance Company of Texas is a holding company for five different insurance companies, including Washington National Life Insurance Company. Washington National, in turn, was (and still is) the direct parent of Conseco Life Insurance Company." Conseco, Inc.'s Brief re: the Effect of the Discharge Order, p. 4, n. 3.

### [*5] B. The Insurance Policies and the R-Factor

These cases involves two different and complex universal life insurance policies issued by Conseco Life: Lifestyle and Lifetime policies. According to Defendants, Lifestyle policies had a minimum face value of $ 250,000 and were designed for wealthier policyholders. *See* Def.'s Opp'n to Pl.'s Mot. for Class Certification, p. 8. Lifetime policies had a minimum face value of $ 25,000 and were intended for a larger, more middle-class market. *Id.*

For conventional universal life policies, the premiums policyholders pay to the insurance company are deposited into a fund known as the "accumulation account," which earns interest. *Id.*, p. 6. At any one time, the accumulation account represents the (1) total premiums the policyholder has paid plus any credited interest, minus (2) any expenses and a monthly "cost of insurance" charge. *Id.* Generally (according to Defendants), insurance companies determine the cost of insurance charge for coverage in the following manner:

> Cost of Insurance = (Monthly Cost of Insurance Rate) x (Death Benefit-Accumulation Account)

*Id.*, p.7.

It is undisputed that in determining [*6] the cost of insurance here, Conseco Life applied a so-called "R-Factor" to both policies at issue here, from their issuance until the R-Factor was discontinued. For Lifestyle policies the R-Factor was discontinued in October, 2003; for Lifestyle policies, in May, 2004. CAC, P 99-100.

The "R-Factor" was a multiplier applied to the accumulation account that lowered the cost of insurance for certain policyholders. *Id.*, pp. 6-7. It was applied in the following manner:

> Cost of Insurance = (Monthly Cost of Insurance Rate) x (Death Benefit-[Accumulation Account x R-Factor])

According to Defendants, the R-Factor multiplier was fixed at the., time the policy was issued and was a function of the policyholder's age, gender, and underwriting class (*e.g.*, smoker or non-smoker). *Id.*, p. 7. The R-Factor, which ranged from 2.25 to 100, resulted in the accumulation account being treated as larger than it actually was for purposes of the cost of insurance calculation, thus reducing the cost of insurance charge. *Id.*, pp 7-8.

### C. The Bankruptcy Proceedings and Notices of Cancellation of the R-Factor

In December, 2002, Old Conseco filed a petition for Chapter 11 [*7] bankruptcy. On September 9, 2003, the Bankruptcy Court in the Northern District of Illinois entered a Confirmation Order approving a plan of reorganization, *In re Conseco, Inc., et al., 299 B.R. 875 (Bankr. N.D. Ill.)*. Paragraph 45 of the Confirmation Order (the "Bar Order"), entitled "Discharge and Injunction Provisions," states in relevant part:

> (ii) on the Effective Date [September 10, 2003], all such Claims against, and Equity Interests in, the Reorganizing or Reorganized Debtors shall be satisfied, discharged and released in full, and
>
> (iii) all Persons shall be permanently enjoined from (a) Asserting against the Reorganized or Reorganizing Debtors, their successors or their assets or properties such Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred on or prior to the Confirmation Date.

Beal Decl. in Support of Conseco, Inc.'s Brief, Ex. 5, p. 55; *see also 11 U.S.C. § 1141(d)(1)* ("the confirmation of a plan (A) discharges the debtor from any debt that arose before the date of such confirmation. . . .").

On August 25, 2003, a mere sixteen days before [*8] Old Conseco obtained the Bar Order, Conseco Life -- Old Conseco's fourth-tier subsidiary -- sent holders of Lifestyle policies a form letter announcing a forthcoming change in their cost of insurance charge. CAC, P 99, Ex. G. It is undisputed that the change was the elimination of the use of the R-Factor, but the letter does not mention the R-Factor. Instead, it states only that "an important change in the way monthly deductions will be calculated for your insurance coverage. . . . will mean an increase in the monthly deduction beginning in October of 2003" because Conseco Life could no longer give policyholders the benefit of a "non-guaranteed reduction." *Id.*

On February 25, 2004, almost six months after the Bar Order, Conseco Life sent a similar form letter to holders of Lifetime policies notifying them of a forthcoming increase in their cost of insurance charge that would be effective May 1, 2004. CAC, P 100. Again, it is undisputed that although it did not say so explicitly, Conseco Life was eliminating the use of the R-Factor in these policies.

Plaintiff's Garn and Gomer originally filed separate complaints in early 2004, in Indiana and California. The Judicial Panel on [*9] Multi-District Litigation assigned their cases and others to this Court for pretrial proceedings. Thereafter, Garn and Gomer filed a Consolidated Amended Complaint ("CAC") against New Conseco and Conseco Life that asserts seven causes of action: (1) breach of contract, (2) insurance bad faith, (3) fraud and intentional misrepresentation, (4) fraudulent concealment, (5) injunctive and restitutionary relief pursuant to *§ 17200*, (6) violations of Consumer Protection and Unfair Business Practices Statutes, and (7) declaratory relief. The gravamen of Plaintiffs' lawsuit is that Conseco Life breached their insurance contracts when it eliminated the R-Factor and significantly increased their cost of insurance payments. CAC, P 166. Plaintiffs allege that New Conseco, which they did not sue in their respective initial complaints, was and is the *alter ego* of Conseco Life and shares liability because after emerging from bankruptcy it directed the elimination of the R-Factor to enhance its balance sheet by hundreds of millions of dollars. CAC PP 18-19, 23.

With regard to *alter ego*, Plaintiffs allege the following in the CAC:

New Conseco is the ultimate parent of a larger group of companies [*10] known as the Conseco Group, and operates the Conseco Group as a single enterprise. CAC, P 50. New Conseco is a holding company with no business operations of its own. It depends on its operating subsidiaries for cash to make principal and interest payments on debt and to pay administrative expenses and income taxes. *Id.*, P 54.

Through three intervening holding companies, both Old and New Conseco completely owned, dominated, controlled and dictated the actions of its subsidiary Conseco Life, without regard for Conseco Life's separate corporate existence and for New Conseco's own benefit. *Id.*, PP 7, 51. For example, before Conseco filed for bankruptcy in December 2002, it directed Conseco Life to engage in substantial transactions within the Conseco Group, such as transferring funds to Old Conseco affiliates and paying excessive, unreasonable and exorbitant dividends to its parent companies. *Id.*, P 60, 77. Conseco Life paid $ 167.7 million in dividends to its affiliated owners despite gains from operations of only approximately $ 76 million. *Id.*, P 78. After it emerged from bankruptcy, New Conseco directed the drastic increase in the cost of insurance charge on the Conseco [*11] Life insurance policies at issue here. The increase was calculated to enhance New Conseco's balance sheet so that it could raise capital. *Id.* P 98. Plaintiffs allege that the cost of insurance increases enabled New Conseco to make immediate favorable financial improvements on its GAAP financial statements and to add $ 360 million to the bottom line of its balance sheet. *Id.* P 105, 109.

III.

### PROCEDURAL MATTERS

This matter is before the Court on Plaintiffs' motion *in limine* for an adjudication that New Conseco's defense of discharge is legally insufficient or has been waived. Plaintiffs argue that New Conseco cannot invoke the Northern District of Illinois Bankruptcy Court's September 9, 2003 Bar Order as a defense to Plaintiffs' *alter ego* claims against it because their claims arose after entry of the Bar Order. Alternatively, Plaintiffs argue that Old Conseco's failure to provide policyholders with actual notice of its bankruptcy proceedings prevents discharge. New Conseco argues that the Bar Order prohibits Plaintiffs from asserting claims against New Conseco (the reorganized entity) based on actions that Old Conseco (the debtor) allegedly took prior [*12] to the entry of the Bar Order.

This matter is before this Court, and not the initial Bankruptcy Court, because of this Court's January 21, 2005, Order exercising jurisdiction pursuant to *28 U.S.C. § 1334(b)*.

After Plaintiffs brought this motion, I granted New Conseco's motion for leave to file an Amended Answer that added the affirmative defense of bankruptcy discharge.[2] At this point, then, the motion before me, for all practical purposes, is a motion by plaintiffs to strike that defense.

> 2   Plaintiffs had argued that Conseco waived the defense of discharge for failure to allege it in its original answer as required by *Fed. R. Civ. P. 8(c)*. "Waiver may be avoided where plaintiff receives adequate notice through some other means [than the answer] (e.g., in motions or through discovery) that defendant intends to assert a particular defense." *Rutter Guide: Federal Civil Procedure Before Trial*, § 8:229 (citing *Camarillo v. McCarthy, 998 F.2d 638 (9th Cir. 1993)* (in absence of prejudice, affirmative defense can be raised for first time at summary judgment)). Plaintiffs knew about the discharge defense as a result of New Conseco's November 2004 motion to strike based on discharge and, even though that motion was withdrawn by New Conseco in favor of an adversary proceeding on the same issue in Bankruptcy Court in Chicago, I found that at this early stage in the proceedings, New Conseco should not be found to have waived the defense.

[*13] IV.

### APPLICABILITY OF BAR ORDER TO PLAINTIFFS' CLAIMS

Plaintiffs allege that New Conseco and Conseco Life decided to mitigate Conseco Life's financial losses by increasing the cost of insurance charges, and that they knew that by removing the R-Factor they would generate policyholder claims and litigation. *See* CAC, PP 98-112. Plaintiffs argue that, as of the date of the Bar Order (September 9, 2003), "[New] Conseco, Inc. and Conseco Life knew that the Policyholders would suffer injury (and thus accrue claims) when the R-Factor was thereafter removed . . . [and] the Policyholders were unaware of either the Bar Order or the injury they were about to suffer (and claims they were about to accrue). . . ." Pl's Mot. to Adjudicate, p. 5. Since Defendants did not implement the planned increase in cost of insurance until after the Bar Order was entered, Plaintiffs argue their claims did not arise for bankruptcy purposes until after the Bar Order. Therefore, Plaintiffs contend, the Bar Order does not preclude their claims.

Defendants argue that for bankruptcy law purposes, a contingent breach of contract claim arises at the time of contracting, not at the time of the [*14] alleged breach. Therefore, they contend, Plaintiffs' breach of contract claims against Conseco Life arose before the Bar Order and were therefore discharged by the Bar Order. Defendants also argue

that Plaintiffs' *alter ego* claims against New Conseco are barred because they depend almost entirely on pre-Bar Order conduct.

As noted in the Introduction, the three issues before the Court are: (1) what are Plaintiffs' claims against Conseco; (2) when did they arise for purposes of bankruptcy law; and (3) did the Bar Order discharge those claims?

### A. Plaintiffs' Fundamental Claim is for Breach of Contract; Their *Alter Ego* Theory Is Not A "Claim" Under Bankruptcy Law

[HN1] In determining what constitutes a claim for bankruptcy purposes and when it arises, "[c]onflict and confusion are almost inevitable." *Cal. Dept. Of Health Services v. Jensen, 995 F.2d 925, 928 (9th Cir. 1993)*. *Section 101(5) of the Bankruptcy Code* defines "claim" broadly as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured [*15] or unsecured.
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

*11 U.S.C. § 101(5)*. According to the Ninth Circuit, "[t]his broadest possible definition of claim is designed to ensure that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." *Jensen, at 929* (internal quotations and citations omitted).

[HN2] There are two essential elements of an *alter ego* claim: (1) a finding that there is such unity of interest and ownership that the separate personalities of the corporation and the individual [or defendant corporation] no longer exist, and (2) that the failure to disregard the corporation would result in fraud or injustice. *See Doe v. Unocal, 248 F.3d 915, 926 (9th Cir.2001); Watson v. Commonwealth Insurance Co., 8 Cal.2d 61, 68, 63 P.2d 295, 298 (1936)*.

The equitable *alter ego* doctrine merely helps identify which parties [*16] ought to be held liable for the misconduct at issue. It does not create an independent cause of action. *See Local 159 v. Nor-Cal Plumbing, Inc., 185 F.3d 978, 985 (9th Cir. 1999)* ("A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself."); *Green Atlas Shipping S.A. v. U.S., 306 F. Supp. 2d 974, 977 (D.Or. 2003)* (pierced corporate veil is not a separate cause of action); *Hennessey's Tavern, Inc. v. American Air Filter Co., Inc., 204 Cal. App. 3d 1351, 1359, 251 Cal. Rptr. 859 (1988)* (claim against a defendant based on the alter ego theory "is not itself a claim for substantive relief."). New Conseco could be liable under an *alter ego* theory even if it were not named as a party in this lawsuit. *See* California Code of Civil Procedure *§ 187* (judgments may be amended to add additional judgment debtors on the ground that a person or entity is the *alter ego* of the original judgment debtor); *Carr v. Barnabey's Hotel Corp. 23 Cal.App.4th 14, 20-21, 28 Cal. Rptr. 2d 127 (1994)*. Bankruptcy courts in California may also amend judgments to accomplish the same [*17] result. *In re Levander, 180 F.3d 1114, 1121 (9th Cir. 1999)*.

For purposes of applying the Bar Order, New Conseco acknowledges that Plaintiffs' claims are essentially for breach of contract, but it conflates Plaintiffs' *alter ego* theory of liability against New Conseco (making it liable only if Conseco Life is liable) with Plaintiffs' breach of contract and related claims against Conseco Life. Defendants have not cited any authority holding that *alter ego* allegations constitute a claim for bankruptcy purposes under *§ 105*. Therefore, the relevant claims to be analyzed are Plaintiffs' breach of contract claims.

### B. Plaintiffs' Breach of Contract and Related Claims Arose After the Bar Order

#### 1. The Legal Standard

[HN3] Although bankruptcy law does not govern whether a breach of contract claim has been stated, it does govern when such a claim arises under the Bankruptcy Code for purposes of determining discharge. *See In re Russell, 193 B.R. 568, 569 (Bankr. S.D. Cal. 1996)*. Unfortunately, there is no dispositive Supreme Court opinion articulating the legal standard for determining when a claim arises. Courts of Appeal have articulated [*18] several different tests, none of which covers every possible claim or dispute. There are at least four different tests, including:

> the "state law accrual" or "right to payment" test. *See In re Hassanally, 208 B.R. 46, 51 (9th Cir. BAP 1997)* ("right to payment" test no longer viable);

. the "relationship" test. *See In re Piper, 58 F.3d 1573, 1577 (11th Cir. 1995)*;

. the "[time of the] debtor's conduct" test. *See Grady v. A.H. Robins Co., 839 F.2d 198, 203 (4th Cir. 1988)*; and

. the "fair contemplation" test, *see Cal. Dept. Of Health Services v. Jensen, 995 F.2d 925 (9th Cir. 1993)*.

For comprehensive and useful discussions of the various tests, see the thoughtful opinions of Judge Charles Breyer in *In re Hexcel*, 239 B.R. 564, 569 (N.D. Cal. 1999) and Judge Peter W. Bowie in *In re Russell*, 193 B.R. 568 (Bankr. S.D. Cal. 1996).

The Court adopts the analysis and applies the "fair contemplation" test set forth in *Jensen* and applied in *Hexcel*. After discussing the various tests in *Hexcel*, Judge Breyer noted that although it is generally true that [*19] "claims in bankruptcy arise from the debtor's conduct . . . the common thread running through the case law is that the [Bankruptcy] Code does not suggest that a creditor's claim is to be discharged if the parties could not reasonably contemplate the existence of that claim prior to they reorganization." *Hexcel, at 570*. Judge Breyer therefore held that a "future claim that cannot be contemplated by the parties is not discharged under the Bankruptcy Code, *even if that claim stems from the pre-petition conduct of the debtor.*" *Id., at 572* (emphasis added).

New Conseco argues that the "fair contemplation" test is limited to cases involving CERCLA or comparable state-law environmental claims. Not so. There is nothing in the Ninth Circuit's *Jensen* decision which supports the "extreme conclusion" that outside the CERCLA context, the debtor's conduct test must be applied even if it would result in the discharge of a claim that the parties had no way of contemplating before the bankruptcy. *Hexcel, at 570*. To the contrary, "the peculiar policy concerns at play in *Jensen* need not be present to justify a holding that future claims that cannot be contemplated [*20] by the parties prior to bankruptcy may not be discharged." *Id., at 570, n. 9*. As shown below, to apply the "fair contemplation" test here is warranted even by the very case defendants primarily relied on at the hearing, *In re Russell, 193 B.R. 568 (Bankr. S.D. Cal. 1996)*.

The key question here is whether Plaintiffs could have contemplated, at the time of the Bar Order, breach of contract claims against Old Conseco's successor on an *alter ego* theory based on post-Bar Order conduct by that debtor's subsidiary. If not, such claims are not barred under the "fair contemplation" test. The facts establish that Plaintiffs cannot be said to have fairly contemplated a breach of contract claim against New Conseco until after the discharge order.

### 2. The Breach Did Not Occur Pre-Petition

[HN4] Ordinarily, a cause of action for breach of contract accrues at the time of breach. *Baker v. Joseph, 16 Cal. 173, 177 (1860); Cochran v. Cochran, 56 Cal.App.4th 1115, 1120, 66 Cal. Rptr. 2d 337 (1997)*. Here, Conseco Life's revocation of the R-Factor for the Lifestyle policies did not occur until some three weeks after the Bar Order was issued. For the [*21] Lifetime policies the cancellation was another seven months later. However, relying on language in *Russell*, defendants argue that breach of contract and fraud claims between contracting parties arise at the time of contracting" because it is within the fair contemplation of the parties at the time they enter into a contract that the other contracting party may breach or make misrepresentations. *Russell, 193 B.R. at 571*. That abstract proposition could result in severe inequities. Nor is *Russell* a meaningful precedent.

In *Russell*, Chapter 7 debtors who had been discharged sought to reopen their bankruptcy case and thereby discharge a breach of contract claim brought against them in state court by a couple who had bought real property from them before they had filed for bankruptcy. The buyers' breach of contract claim alleged that the seller-debtors had failed to disclose a soil subsidence problem. The Bankruptcy Court permitted the seller-debtors to reopen the bankruptcy. Judge Bowie limited the scope of his ruling, however:

". . . [W]here the claimants had a prepetition relationship to the debtor and the circumstance which gives rise to their [*22] claim, it is within the fair contemplation of the parties that a contingent claim exists at that point in time. That contingent claim is subject to the subsequent bankruptcy proceeding and may be discharged, depending on its *nature and whether its nondischargeability is timely* asserted."

*Id. at 571-72* (emphasis added)

*Russell* is not directly applicable to (or dispositive with regard to) Plaintiffs' claims against New Conseco, for several reasons. First, in contrast to the situation in *Russell*, Plaintiffs did not have a contractual relationship with the debtor, Old Conseco. Instead, they had a contract with that debtor's fourth-tier subsidiary, Conseco Life. Second, the relationship that plaintiffs did have with Conseco Life was not so direct, so intimate or so concrete as to make it likely that they would contemplate a breach merely because they were buying a life insurance policy. When you buy real property it is an inherent and recurring risk that the seller will fail to disclose a material condition. When you buy life insurance, in contrast, you do not contemplate that your coverage will vanish or your costs greatly multiply. Third, *Russell* [*23] involved only pre-petition conduct of the debtor (failing to disclose a subsidence problem.) Here, Plaintiffs allege *alter ego* conduct that not only spans Old Conseco's bankruptcy proceedings, but also involves critical post-confirmation conduct of New Conseco (the elimination of the R-Factor through its allegedly controlled subsidiary). Fourth, unlike in *Russell*, Plaintiffs' claimed injuries were not caused by pre-petition conduct for which they had even constructive notice. According to the CAC, Plaintiffs were never notified of the very existence or use of the R-Factor until Conseco Life eliminated it. The resulting increase in the cost of insurance did not occur until after the Bankruptcy Court entered the Bar Order.

Plaintiffs did receive notice that "an important change in the way monthly deductions will be calculated for your insurance coverage." That notice was provided only two weeks before Old Conseco's discharge order; it was provided by Conseco Life, not Old Conseco; and it said nothing at all about Old Conseco's bankruptcy proceedings. Moreover, Old Conseco never sent actual notice of its bankruptcy proceedings to policyholders of Conseco Life. [3] Finally, it [*24] was only after Old Conseco obtained its discharge order that the cost increase was implemented. Not until then did Conseco Life's insureds have reason to realize that they should investigate whether Old Conseco -- by then it was New Conseco -- was responsible in any way. Under these circumstances, Plaintiffs could not have fairly contemplated their claims against New Conseco. [4]

> 3 Known creditors whose pecuniary interests might be directly or adversely affected by the entry of a Bar Order are constitutionally entitled to actual notice of entry of the Bar Order. *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 297, 73 S. Ct. 299, 97 L. Ed. 333 (1953).
> 4 Defendants seem to agree, arguing at one point in their papers that "'Old' Conseco could not have reasonably foreseen that it might be sued on an alter ego theory based on the decision of a fourth-tier, heavily regulated subsidiary to eliminate a non-guaranteed, extra-contractual benefit that applied to certain policies." Conseco's Brief, p. 16. Surely if the debtor could not contemplate the claims, then neither could the Plaintiffs.

[*25] This conclusion in no way contravenes the purposes of the Bankruptcy Code. [HN5] Until a breach occurs, a contracting party has no reason to investigate who, if anyone, might possibly be the *alter ego* of the party with whom he has contracted. To hold that contracting parties can fairly contemplate a claim against a debtor-in-bankruptcy who, as *alter ego*, controlled the party with whom they contracted would invite parties to assert highly speculative, future claims in bankruptcy proceedings across the nation. As stated by Plaintiffs, "in the absence of any fathomable claim based on unknowable future conduct, what claim could conceivably be asserted in the Conseco, Inc. bankruptcy? . . . [And] how could any such claim be evaluated or administered? A freestanding' *alter ego* claim is a logical impossibility." [5] Pl.'s Brief in Response to Minute Order, p. 3, n. 3. Given that situations such as those presented here are relatively unusual, Defendants' contention that permitting Plaintiffs to sue New Conseco will open new floodgates of litigation is overstated.

> 5 In mass tort cases, courts have set aside funds to protect individuals with future, unknown claims, such as those exposed to a harmful product who would not become aware of their claims until after the reorganization. *See Hexcel, at 568*. No such protections could realistically be established for persons who purchased insurance policies from a subsidiary of an insurance holding company.

[*26] Moreover, [HN6] although bankruptcy is primarily designed to settle claims of all those who know of their claims against the debtor, including contingent claims, and to provide the debtor with a fresh start, it does not do so at the expense of potential creditors who could not have known about their rights. *See Jensen, at 930* (noting that "nothing in the legislative history or the Code suggests that Congress intended to discharge a creditor's rights before the creditor knew or should have known that its rights existed.").

Finally, [HN7] the protections afforded by discharges from bankruptcy are not meant to extend to viable claims against debtors who did not provide notice to claimants. *See In re Savage Industries, Inc., 43 F.3d 714, 719-21 (1st Cir.*

*1994)* (discharge of claims without notice violates the *Due Process Clause of the United States Constitution*, noting that "[n]otice is the cornerstone underpinning Bankruptcy Code procedure.").

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiffs' motion *in limine*. [6] At the time the Bankruptcy Court entered the Bar Order, Plaintiffs could not have reasonably contemplated a breach of contract [*27] claim against Conseco, Inc. based on an *alter ego* theory arising from an alleged post-Bar Order breach of a contract by their insurance carrier, Conseco Life -- a breach that had not yet occurred. Therefore, Plaintiffs' claims against New Conseco are not discharged by the Bankruptcy Court's Bar Order.

6   Dkt. No. 113.

IT IS SO ORDERED.

DATED: April, 13 2005

A. HOWARD MATZ

United States District Judge