UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re LOMBARD FLATS, LLC, | Case No. 15-cv-00870-PJH |
| Debtor. | Bankr. No. 09-32219 DM |
| DEMAS YAN, | |
| Appellant, | **ORDER AFFIRMING ORDERS OF THE BANKRUPTCY COURT** |
| v. | |
| LOMBARD FLATS, LLC, | |
| Appellee. | |

Appellant Demas Yan appeals from the bankruptcy court's order of contempt, entered January 5, 2015, and order denying motion for reconsideration, entered February 17, 2015. The matter is submitted on the briefs and is suitable for decision without oral argument. For the reasons set forth below, the orders of the bankruptcy court are AFFIRMED.

**BACKGROUND**

A.   **Parties to the Bankruptcy Appeal**

1.   **Appellee/Debtor**

Appellee Lombard Flats, LLC ("debtor") is a reorganized debtor under a confirmed Chapter 11 plan. Debtor is a California limited liability company that was created December 22, 2008 by Martin Eng ("Eng"), the debtor's principal. Debtor is the owner of a three flat building located at 949-953 Lombard Street, San Francisco, California (the

United States District Court
Northern District of California

"property"). Eng owned the property from 1985 to January 26, 2009, when Eng transferred the property to debtor Lombard Flats, LLC.

Debtor filed for Chapter 11 bankruptcy on August 3, 2009. Eng is the responsible individual in the Chapter 11 case. On July 19, 2010, the bankruptcy court confirmed debtor's reorganization plan. *In re Lombard Flats, LLC*, No. 09-32219 (Bankr. N.D. Cal., July 19, 2010), doc. no. 98. The plan provided a payment plan for debtor to pay the full amount due to creditor JP Morgan Chase as successor to Washington Mutual Bank, and a payment plan to creditor Shirley Chao on an agreed claim. Mark J. Romero, counsel for secured creditor Shirley Chao, was appointed disbursing agent under the plan. The remaining creditor claims were wholly unsecured and discharged pursuant to the plan; the bankruptcy court entered judgment voiding those liens on January 24, 2011. The bankruptcy court entered a final decree on May 23, 2011, and the bankruptcy case was closed June 3, 2011.

**2.    Appellant Demas Yan**

Appellant Demas Yan ("appellant"), also known as Dennis Yan, is an attorney who has represented two purported creditors who have filed two separate actions in state court against debtor Lombard Flats, LLC:

(1)    Cheuk Tin Yan ("Cheuk Yan"), appellant's father, filed the first state court action against debtor, Eng, Eng's relatives and their closely held companies, seeking recovery for money owed on promissory notes payable to Cheuk Yan issued by Eng in 2007 and 2008, alleging a conspiracy to defraud Cheuk Yan by making fraudulent transfers and encumbrances on the Lombard Street property, including a fraudulent conveyance from Eng to debtor. Decl. of Martin Eng ISO [Second] Mot. Contempt ("Eng Decl."), Ex. 1 (Complaint, *Cheuk Tin Yan v. Lombard Flats, LLC, et al. ("Cheuk Yan")*, No. CGC 12-524745 (San Francisco Superior Ct. Sept. 26, 2012)), *In re Lombard Flats*, Bankr. No. 09-32219, doc. no. 183. On January 11, 2013, appellant substituted in the state court action as counsel for Cheuk Yan, who initially filed the complaint in pro per.

2

1    (2)    Legal Recovery, LLC, a limited liability company created on December 19,

2 2013, filed the second state court action against debtor, Eng, and unnamed Doe

3 defendants for breach of promissory notes payable to Cheuk Yan or Mei Ling Fang, who

4 assigned all rights, title and interest in the claim to Legal Recovery, for the purpose of

5 collection. Eng Decl., Ex. 3 (Complaint, *Legal Recovery, LLC v. Eng, et al. ("Legal*

6 *Recovery")*, No. CGC 14-542378 (San Francisco Superior Ct. Oct. 27, 2014)). Appellant,

7 appearing as Dennis Yan, represents Legal Recovery in the second lawsuit against

8 debtor. Legal Recovery is registered at the same address as appellant's law office, and

9 its agent for service of process is Tony Lee, who is known to be appellant's close

10 associate. Eng Decl. ¶¶ 4, 5 and Ex. 3.

11 **B.    First Lawsuit Filed Against Debtor**

12     **1.    State Court Action Filed by Cheuk Yan**

13     The procedural history and factual background underlying the *Cheuk Yan* litigation

14 are more fully set forth in the order affirming the orders of the bankruptcy court in the

15 related bankruptcy appeal, *Cheuk Tin Yan v. Lombard Flats, LLC (In re Lombard Flats,*

16 *LLC)*, No. 13-4735 PJH, doc. no. 8, *appeal docketed*, No. 14-16624 (9th Cir. August 22,

17 2014). In brief, Cheuk Yan claimed that Eng owed him $900,144.67 on three promissory

18 notes issued in 2007 and 2008, plus interest accrued as of September 25, 2012: (1)

19 $407,453 due on a promissory note dated October 1, 2007, secured by a deed of trust on

20 property located at 242-248 5th Avenue, San Francisco; (2) $205,045.79 due on a

21 promissory note dated December 1, 2007, secured by a deed of trust on property located

22 at 818, 818A and 820 Green Street, San Francisco; and (3) $287,645.88 due on a

23 promissory note dated April 1, 2008, which replaced (a) a promissory note in the principal

24 amount of $30,000, dated December 12, 2007, and (b) a deed of trust dated November

25 28, 2007 securing $86,626.75 on property located at 131 Mendosa Avenue, San

26 Francisco. *Cheuk Yan* Complaint ¶ 9 and Exs. A-C (filed Sept. 26, 2012) and Decl. of

27 Cheuk Tin Yan ISO Request for Court Judgment (filed March 18, 2013).

28

3

1   Cheuk Yan alleged that at the time of making the loans, Eng was the sole owner of
2   the property at 949-953 Lombard Street.  After issuing the promissory notes, Eng formed
3   debtor Lombard Flats, LLC, and transferred title of the Lombard Street property to debtor,
4   without consideration, on January 26, 2009.  Cheuk Yan alleged that after Eng
5   transferred the property title to debtor, Eng caused liens and long term residential leases
6   to encumber the Lombard Street property, without consideration.  Cheuk Yan sued
7   debtor, Eng, Eng's relatives, and entities related to Eng and/or his relatives for conspiracy
8   to defraud by causing the transfer of the Lombard Street property from Eng to Lombard
9   Flats, LLC, and then encumbering the title to the Lombard Street property with intent to
10  hinder, delay or defraud Cheuk Yan as a creditor.

11   On January 11, 2013, appellant Demas Yan entered his appearance as counsel
12  for Cheuk Yan in the state court action against debtor.  On March 18, 2013, appellant
13  filed a Notice of Hearing in the state court action on Cheuk Yan's request for entry of
14  court judgment against debtor.

15   On March 21, 2013, Joan Chipser, counsel for debtor, sent a letter to appellant
16  demanding that the *Cheuk Yan* lawsuit be dismissed on the ground that any claim Cheuk
17  Yan had against debtor was discharged upon confirmation of the Chapter 11 plan.  *In re*
18  *Lombard Flats, LLC*, Bankr. No. 09-32219, doc. no. 136 (Decl. of Joan M. Chipser in
19  Support of Mot. for Order of Contempt for Violation of 11 U.S.C. § 524(a)(2)).  Appellant
20  responded to Chipser's correspondence but did not dismiss the *Cheuk Yan* action
21  against debtor.

22   On May 2, 2013, the state court entered default judgment for Cheuk Yan against
23  debtor Lombard Flats, LLC in the amount of $960,299.59, comprising $900,144.67 in
24  damages and $60,154.92 prejudgment interest.  Thereafter, debtor filed its first motion for
25  an order of contempt in the bankruptcy court.

26   **2.    First Motion for Order of Contempt Filed by Debtor**

27   On May 3, 2013, debtor filed a motion in bankruptcy court for an order of contempt
28  against Cheuk Yan and his attorney, appellant Demas Yan.  The bankruptcy court held a

4

United States District Court
Northern District of California

1  hearing on the motion for order of contempt on June 14, 2013, and ordered further

2  briefing to be submitted by the parties. On August 2, 2013, the bankruptcy court issued a

3  memorandum decision and order on debtor's motion for an order of contempt, holding the

4  state court judgment against debtor void as a matter of law and ordering appellant and

5  Cheuk Yan to vacate the default judgment or face contempt. *In re Lombard Flats, LLC*,

6  Bankr. No. 09-32219, doc. nos. 151 and 152.

7  On August 14, 2013, appellant, as counsel for Cheuk Yan, filed a motion to amend

8  the findings and order on the motion for contempt. On September 20, 2013, the

9  bankruptcy court held a hearing and denied the motion to amend. *Id.*, doc. no. 158.

10  Cheuk Yan, represented by appellant Demas Yan, appealed the orders of the

11  bankruptcy court on debtor's first motion for order of contempt, declaring the *Cheuk Yan*

12  state court judgment void, and denying Cheuk Yan's motion to amend the findings. The

13  court affirmed the orders of the bankruptcy court on August 13, 2014. Cheuk Yan has

14  appealed the court's decision to the Ninth Circuit Court of Appeals, where the matter

15  remains pending.

16  **C.   Second Lawsuit Filed Against Debtor**

17      **1.   State Court Action Filed by Legal Recovery**

18  On October 27, 2014, appellant, appearing as counsel for Legal Recovery, filed a

19  new complaint in San Francisco Superior Court against debtor and Eng alleging breach

20  of four promissory notes made by Eng, including the three promissory notes payable to

21  Cheuk Yan that were at issue in the *Cheuk Yan* state court action and assigned to Legal

22  Recovery. Complaint ¶¶ 9-11, *Legal Recovery* (San Francisco Superior Ct. Oct. 27,

23  2014). The fourth promissory note dated January 15, 2008, which is payable to Mei Ling

24  Fang and assigned to Legal Recovery, is secured by a deed of trust on property located

25  at 242-248 5th Avenue, San Francisco.

26  In the second lawsuit against debtor, Legal Recovery alleges that Eng has not

27  paid any sum on the principal or interest accrued on the promissory notes. As alleged in

28  the first lawsuit against debtor filed by Cheuk Yan, the second lawsuit filed by Legal

United States District Court
Northern District of California

5

1    Recovery alleges that at the time of making the loans, Eng was the sole owner of the
2    property at 949-953 Lombard Street, that Eng formed Lombard Flats, LLC on December
3    22, 2008, and that Eng transferred title to the property to Lombard Flats, LLC on January
4    26, 2009.  The complaint in *Legal Recovery* also alleges that debtor Lombard Flats, LLC
5    is an alter ego of Eng and is liable jointly and severally for Eng's debts.

6    On November 5, 2014, Chipser, counsel for debtor, emailed appellant Demas Yan
7    demanding that he dismiss the *Legal Recovery* complaint against debtor on the ground
8    that it violates the bankruptcy injunction and violates prior court rulings upholding the
9    discharge of Cheuk Yan's claim against debtor.  Decl. of Joan Chipser ISO [Second] Mot.
10   for Order of Contempt ¶ 5, *In re Lombard Flats, LLC,* Bankr. No. 09-32219, doc. no. 182.
11   Appellant responded to Chipser's email and refused to dismiss the *Legal Recovery* state
12   court action on the ground that the second lawsuit did not assert a cause of action
13   against debtor, but only sought to hold debtor liable on Eng's debts as Eng's alter ego.
14   *Id.*  On December 5, 2014, appellant filed a request for entry of default against debtor in
15   the *Legal Recovery* state court action.  Req. for Judicial Notice, *In re Lombard Flats, LLC*,
16   Bankr. No. 09-32219, doc. no. 186.

17   **2.    Second Motion for Order of Contempt Filed by Debtor**

18   On November 21, 2014, debtor filed a second contempt motion in the bankruptcy
19   court, seeking an order of contempt and sanctions against appellant Demas Yan for filing
20   the *Legal Recovery* lawsuit in violation of the discharge injunction of Bankruptcy Code
21   § 524, made applicable by Bankruptcy Code § 1141(d).

22   Appellant filed an opposition to the second contempt motion, erroneously naming
23   Cheuk Yan as the responding party, rather than himself.  Debtor argued as a procedural
24   matter that the opposition should be stricken and that the second motion for an order of
25   contempt against appellant Demas Yan should be granted as unopposed.  On December
26   19, 2014, the bankruptcy court held a hearing on debtor's second contempt motion.  The
27   bankruptcy court construed the opposition as having been filed by appellant and declined
28   to find that appellant had waived his response.  The bankruptcy court held that the

United States District Court
Northern District of California

6

1  second lawsuit against debtor violated the discharge injunction under § 524, and held

2  appellant in contempt.  In the Order of Contempt filed January 4, 2015, appellant was

3  ordered to dismiss the *Legal Recovery* action against debtor in state court, and to pay

4  Chipser's fees incurred by debtor in bringing the contempt motion.  *In re Lombard Flats,*

5  *LLC,* Bankr. No. 09-32219, doc. no. 189.

6      Appellant filed a motion for reconsideration of the contempt order, on which the

7  bankruptcy court held another hearing on February 13, 2015.  On February 17, 2015, the

8  bankruptcy court entered an order denying appellant's motion for reconsideration.

9      On February 20, 2015, appellant filed a notice of appeal from the orders of the

10  bankruptcy court granting debtor's second contempt motion and denying appellant's

11  motion for reconsideration.  The bankruptcy court granted debtor's request for

12  certification of direct appeal to the Ninth Circuit, given the pendency of the appeal before

13  that court of the bankruptcy court's orders on debtor's first motion for contempt.  By order

14  entered June 11, 2015, the Ninth Circuit denied debtor's petition for permission to appeal

15  directly to the Ninth Circuit from the bankruptcy court's orders on debtor's second motion

16  for contempt.

17      Appellant filed an opening brief in the present appeal on September 2, 2015, in

18  response to an order to show cause issued by the court.  Debtor timely filed a responsive

19  brief, and appellant filed a timely reply.  The matter is fully submitted.

20  **ISSUES PRESENTED**

21  Yan presents the following issues on appeal:

22  (1)  Whether the bankruptcy court had subject matter jurisdiction to order the

23      dismissal of the state court action against debtor based on alter ego

24      doctrine.

25  (2)  Whether the allegations of alter ego liability against debtor, to support

26      enforcement of a judgment entered against debtor's principal in the *Legal*

27      *Recovery* action, are subject to the bankruptcy discharge.

28

United States District Court
Northern District of California

7

1

2   **STANDARD OF REVIEW**

3   The court reviews the bankruptcy court's conclusions of law de novo. *Citibank v.*
*Eashai (In re Eashai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). Findings of fact, whether
based on oral or documentary evidence, shall not be set aside unless clearly erroneous,
and due regard shall be given to the opportunity of the bankruptcy court to judge the
credibility of the witnesses. Fed. R. Bankr. P. 8013. A factual finding is clearly erroneous
if, after examining the evidence, the reviewing court "is left with the definite and firm
conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S.
564, 573 (1985).

**DISCUSSION**

**A.   Legal Standard**

Bankruptcy Code § 524(a) provides in part as follows:

**§ 524. Effect of discharge**

(a)   A discharge in a case under this title -

(1)   voids any judgment at any time obtained, to the extent
that such judgment is a determination of the personal liability
of the debtor with respect to any debt discharged under
section 727, 944, 1141, 1228, or 1328 of this title, whether or
not discharge of such debt is waived;

(2)   operates as an injunction against the commencement
or continuation of an action, the employment for process, or
an act, to collect, recover or offset any such debt as a
personal liability of the debtor, whether or not discharge of
such debt is waived; . . . .

11 U.S.C. § 524(a). The bankruptcy discharge releases the debtor from liability on debts
and enjoins any creditor's effort to collect a discharged debt as a liability of the debtor.
*See In re Gurrola*, 328 B.R. 158, 163-64, 175 (9th Cir. BAP 2005) ("judgments and acts in
violation of the [discharge] injunction are automatically void ab initio, hence self-
executing, for the same reasons as the automatic stay").

Section 1141(d)(1) provides that the order confirming the Chapter 11 plan
"discharges the debtor from any debt that arose before the date of such confirmation . . .
whether or not (i) a proof of the claim based on such debt is filed or deemed filed under

United States District Court
Northern District of California

8

1   Section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the

2   holder of such claim has accepted the plan . . . ." 11 U.S.C. § 1141(d)(1). A claim is

3   defined by the Bankruptcy Code as a "right to payment, whether or not such right is

4   reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

5   disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

6   For purposes of the discharge in bankruptcy, a claim arises at the time of the events

7   giving rise to the claim, not at the time plaintiff is first able to file suit on the claim. *In re*

8   *Heilman*, 430 B.R. 213, 219-20 (9th Cir. BAP 2010) (citing *O'Loghlin v. County of*

9   *Orange*, 229 F.3d 871, 874 (9th Cir. 2000)) (internal quotation marks omitted). "A claim

10   arises when a claimant can fairly or reasonably contemplate the claim's existence even if

11   a cause of action has not yet accrued under nonbankruptcy law." *In re Heilman*, 430 B.R.

12   at 220 (citation and internal quotation marks omitted). A bankruptcy court's confirmation

13   is a final binding order, accorded full res judicata effect and precludes the raising of

14   issues which could or should have been raised during the pendency of the case.

15   *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel*

16   *Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995);

17   *accord Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).

18   **B.   Bankruptcy Court Jurisdiction**

19       This is the second appeal filed by Demas Yan challenging orders of the

20   bankruptcy court enforcing the bankruptcy discharge. In his first appeal, appellant

21   challenged the bankruptcy court's jurisdiction to discharge the debt owed to Cheuk Yan

22   and declare the state court judgment in the first lawsuit against debtor void. By order

23   entered August 13, 2014, which remains pending on appeal before the Ninth Circuit, the

24   court affirmed the holding of the bankruptcy court that any fraudulent transfer claim

25   against debtor based on Eng's debt to Cheuk Yan was a prepetition claim that was

26   discharged, and that the bankruptcy court properly exercised jurisdiction over Cheuk

27   Yan's state court action, to determine whether it violated the discharge injunction. *Cheuk*

28   *Tin Yan v. Lombard Flats, LLC (In re Lombard Flats, LLC)*, No. 13-4735 PJH, doc. no. 8.

9

1    In the present appeal, appellant challenges the bankruptcy court's subject matter
2  jurisdiction to enforce the discharge over *Legal Recovery,* the second state court action
3  against debtor, which asserts alter ego liability against debtor for Eng's debt to Cheuk
4  Yan based on the same three promissory notes that were at issue in the *Cheuk Yan* state
5  court action. Appellant states that the *Legal Recovery* action "alleges that ENG breached
6  the contractual obligations on the promissory notes, and that [debtor] is the alter ego of
7  ENG." Opening Br. at 5. Appellant concedes that the claim against Eng for breach of
8  contract on the promissory notes occurred before confirmation of the Chapter 11
9  reorganization plan. *Id.* He argues, however, that the alter ego allegations in the *Legal*
10  *Recovery* action do not establish an independent claim for relief against debtor that would
11  be subject to the bankruptcy discharge. Rather, he argues, the allegations that debtor is
12  an alter ego of Eng provide a factual basis for piercing the corporate veil to enforce a
13  judgment against Eng, which is not subject to the discharge. *Id.*

14    Bankruptcy courts have subject matter jurisdiction over proceedings "arising under
15  title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).
16  Recognizing the limited nature of postconfirmation jurisdiction, the Ninth Circuit has
17  articulated a "close nexus" test to determine the scope of bankruptcy court's
18  postconfirmation "related to" jurisdiction. The close nexus test encompasses matters
19  "affecting the 'interpretation, implementation, consummation, execution, or administration
20  of the confirmed plan.'" *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013)
21  (quoting *Montana v. Goldin (In re Pegasus Gold Corp.),* 394 F.3d 1189, 1193 (9th Cir.
22  2005)) (internal citations omitted). Appellant raises no dispute that seeking recovery from
23  debtor on alter ego grounds on a judgment entered against Eng in the *Legal Discovery*
24  lawsuit would affect the implementation, consummation, execution, or administration of
25  the confirmed Chapter 11 plan, bearing a close nexus to the bankruptcy proceeding.
26  Rather, he argues that the bankruptcy court lacks jurisdiction because alter ego
27  allegations do not create an independent cause of action against debtor and do not,
28  therefore, constitute a claim subject to discharge.

United States District Court
Northern District of California

10

1    The bankruptcy court held that the alter ego theory asserted against debtor in
2    *Legal Recovery* fell under the broad definition of a claim under bankruptcy law, which
3    includes a right to payment, including a disputed and an equitable right to payment.  Dec.
4    19, 2014 Transcript at 7, *In re Lombard Flats, LLC*, Bankr. No. 09-32219, doc. no. 243.
5    The Bankruptcy Code defines "claim" to mean "(A) right to payment, whether or not such
6    right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,
7    unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to
8    an equitable remedy for breach of performance if such breach gives rise to a right to
9    payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,
10   contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  11
11   U.S.C. § 101(5).  The bankruptcy court held that the alter ego remedy theory alleged in
12   the *Legal Recovery* complaint, asserting that Legal Recovery had a right to be paid by
13   debtor Lombard Flats because Eng was liable on the promissory notes and because
14   Lombard Flats is Eng's alter ego, fell within this definition of a claim "because it is an
15   equitable right to payment."  Dec. 19, 2014 Transcript at 7.

16   Appellant argues that alter ego liability is not an independent cause of action, and
17   that such liability does not accrue except upon entry of judgment on the underlying
18   substantive claim, concluding that an allegation of alter ego liability is not a claim under
19   bankruptcy law.  Opening Br. at 3 (doc. no. 6).  Although appellant concedes that the
20   breach of contract claim against Eng arose before confirmation of the Chapter 11 plan,
21   he argues that the "accrual of alter ego liability can and does usually occur long after the
22   accrual of the underlying substantive claim.  Therefore, [an] allegation of alter ego liability
23   is not a recognized claim under bankruptcy."  *Id*.  Appellant cites no controlling authority
24   in support of his proposition that a discharge pursuant to confirmation of a Chapter 11
25   plan cannot reach alter ego allegations against the Chapter 11 debtor to recover on a
26   debt that arose before confirmation.

27   The bankruptcy discharge here (1) voids any judgment at any time obtained, to the
28   extent that such judgment is a determination of the personal liability of the debtor with

11

1   respect to any debt discharged under § 1141; and (2) enjoins "the commencement or

2   continuation of an action, the employment for process, or an act, to collect, recover or

3   offset any such debt as a personal liability of the debtor." 11 U.S.C. §§ 524(a)(1) and (2).

4   "Section 524(a)(1) provides that any judgment on a debt that is discharged is void as a

5   determination of the debtor's personal liability. Section 524(a)(1) clearly pertains to

6   judgments obtained both before and after the discharge order, in that it refers to 'any

7   judgment at any time obtained.'" 4 Collier on Bankruptcy ¶ 524.02[1] (15th ed. 2015).

8   Characterizing the alter ego theory as a "judgment collection remedy," rather than a claim

9   for substantive relief, does not escape enforcement of the discharge. *See* Reply Br. at 2

10  (doc. no. 11).

11       The bankruptcy court correctly held that appellant's reverse veil-piercing theory to

12  seek recovery against debtor as the alter ego of debtor's principal, Eng, falls squarely

13  within the meaning of a claim under the Bankruptcy Code, which covers any right to

14  payment, whether contingent, unmatured or equitable. 11 U.S.C. § 101(5)(A). "This

15  'broadest possible definition' of 'claim' is designed to ensure that 'all legal obligations of

16  the debtor, *no matter how remote or contingent,* will be able to be dealt with in the

17  bankruptcy case.'" *In re Jensen*, 995 F.2d 925, 929-30 (9th Cir. 1993) (quoting H.R. Rep.

18  No. 95-595, at 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266). As the court in

19  *In re Jensen* recognized, the legislative history of the Bankruptcy Reform Act of 1978

20  reflects the intent to define "claim" in the bankruptcy context broadly:

21           The definition in paragraph (4) adopts an even broader
             definition of claim than is found in the present debtor
22           rehabilitation chapters. The definition is any right to payment,
             whether or not reduced to judgment, liquidated, unliquidated,
23           fixed, contingent, matured, unmatured, disputed, undisputed,
             legal, equitable, secured, or unsecured. The definition also
24           includes as a claim an equitable right to performance that
             does not give rise to a right to payment. By this broadest
25           possible definition and by the use of the term throughout the
             title 11, especially in subchapter I of chapter 5, the bill
26           contemplates that all legal obligations of the debtor, no matter
             how remote or contingent, will be able to be dealt with in the
27           bankruptcy case. It permits the broadest possible relief in the
             bankruptcy court.
28

United States District Court
Northern District of California

12

1   S. Rep. No. 95-989, at 21-22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808.  Under

2   this broad definition of a claim under bankruptcy law, the alter ego theory asserted

3   against debtor by Legal Recovery, as Cheuk Yan's assignee, is a claim subject to

4   discharge.

5   　　　The bankruptcy court properly exercised its civil contempt power to enforce the

6   discharge injunction pursuant to section 105(a) of the Bankruptcy Code, which authorizes

7   the court to "issue any order, process, or judgment that is necessary or appropriate to

8   carry out the provisions of this title."  11 U.S.C. § 105(a).  *See Barrientos v. Wells Fargo*

9   *Bank, N.A.*, 633 F.3d 1186, 1189, (9th Cir. 2011) (contempt proceedings arising out of a

10  violation of a discharge injunction must be brought by motion in the bankruptcy case); 4

11  Collier on Bankruptcy ¶ 524.02[2][c] (15th ed. 2015) ("Civil contempt is the normal

12  sanction for violations of the discharge injunction.").

13  **C.   Discharge of *Legal Recovery* Alter Ego Allegations**

14  　　　Appellant challenges the bankruptcy court's determination that the alter ego

15  allegations in the *Legal Recovery* suit were subject to the discharge injunction.

16  Appellant's briefs do not clearly distinguish between the issue "[w]hether alter ego

17  allegations are subject to debtor's bankruptcy discharge injunction" from the jurisdictional

18  issue, discussed above, "[w]hether the bankruptcy court had subject matter jurisdiction to

19  order the dismissal of the state court action against Bankruptcy Debtor based on alter-

20  ego doctrine."  Opening Br. at 1 (doc. no. 6).  To the extent that appellant argues

21  generally that an alter ego theory is an equitable remedy that is not a "claim" under

22  bankruptcy law subject to discharge, the court has determined that alter ego allegations

23  seeking a "right to payment" against debtor constitute a "claim" within the meaning of the

24  discharge injunction, enforcement of which is vested in the bankruptcy court.  The court

25  next considers appellant's contention that the alter ego remedy was not discharged

26  because the *Legal Recovery* judgment against Eng was not obtained until after

27  confirmation of the Chapter 11 plan and that, therefore, debtor's alter ego liability on the

28  judgment "did not arise pre-confirmation."  Opening Br. at 3.

13

United States District Court
Northern District of California

1        **1.    Waiver of Alter Ego Remedy**

2        Before reaching the merits of appellant's argument that alter ego liability did not

3    arise before confirmation of the plan, the court addresses debtor's contention that "[a]lter

4    ego was waived by not pleading this theory in Lawsuit No. 1." Doc. no. 9 at 6. To the

5    extent that debtor argues that the alter ego remedy is not available to Legal Recovery in

6    state court because it was waived by Cheuk Yan's failure to plead alter ego allegations in

7    the first lawsuit against debtor, this issue was not raised before the bankruptcy court, and

8    the court declines to reach it. *See In re Jan Weilert RV, Inc.*, 315 F.3d 1192, 1199 (9th

9    Cir. 2003) ("Absent exceptional circumstances, this court generally will not consider

10   arguments raised for the first time on appeal.").

11       The record reflects that in support of debtor's second motion seeking an order of

12   contempt against appellant, debtor argued that appellant Demas Yan, as the attorney for

13   his father, Cheuk Yan, should have presented the alter ego allegations to the bankruptcy

14   court before confirmation of the plan, which discharged Cheuk Yan's alter ego claims

15   against debtor. *In re Lombard Flats*, Bankr. No. 09-32219, doc. no. 185. To the extent

16   that debtor argues that appellant waived his alter ego claim against debtor by failing to

17   present a timely claim to the bankruptcy court, this question is rendered moot by the

18   determination whether the alter ego claim was discharged. The court will address the

19   merits of appellant's argument that the alter ego claim did not arise before confirmation of

20   the plan and therefore was not discharged.

21       Debtor also argues that the *Legal Recovery* lawsuit is barred by the doctrine of res

22   judicata, or claim preclusion. Doc. no. 9 at 5-6 (citing *Western Radio Services Co., Inc. v.

23   Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)). This argument was not squarely raised

24   before the bankruptcy court, and will not be considered for the first time on appeal.

25       **2.    Alter Ego Claim Arose Prepetition**

26       As discussed in Section B, above, a claim is broadly defined under the Bankruptcy

27   Code to include a right to payment or equitable remedy "whether or not such right is

28   reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

United States District Court
Northern District of California

14

1   disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5).

2   Federal law determines when a claim arises under the Bankruptcy Code. *ZiLOG, Inc. v.*

3   *Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1000 (9th Cir. 2006). "It is well-established that

4   a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of

5   action that has not yet accrued." *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel,*

6   *Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000). The Ninth Circuit has adopted the "fair

7   contemplation" test for determining when a claim accrues in the bankruptcy context.

8   *Zilog*, 450 F.3d at 1000; *Cool Fuel*, 210 F.3d at 1007; *California Department of Health*

9   *Services v. Jensen (In re Jensen)*, 995 F.2d 925, 930 (9th Cir.1993) (per curiam). "Under

10  that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's

11  existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re*

12  *SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009) (citing *Cool Fuel*, 210 F.3d at 1007).

13      The bankruptcy court held that appellant was in contempt for violation of 11 U.S.C.

14  § 524(a)(2) by filing the *Legal Recovery* lawsuit against debtor in violation of the

15  discharge injunction. At the hearing on debtor's second motion for an order of contempt,

16  the bankruptcy court determined that all the material facts alleged in the *Legal Recovery*

17  complaint giving rise to debtor's liability, as the alter ego of Eng, were prepetition facts.

18  Dec. 19, 2014 Transcript at 7-8. The bankruptcy court found that the *Legal Recovery*

19  action, filed by appellant, prosecuted a claim to include an equitable remedy against

20  debtor based on operative facts that were discharged. *Id.* at 8-9. The bankruptcy court

21  ordered appellant to dismiss the *Legal Recovery* action against debtor within 10 days,

22  and awarded debtor's attorney's fees. Order of Contempt, *In re Lombard Flats*, Bankr.

23  No. 09-32219, doc. no. 189.

24      The bankruptcy court correctly determined that the theory of liability alleged by

25  Legal Recovery was based on allegations that (1) Eng was liable on the promissory notes

26  executed by Eng in favor of Cheuk Yan, who assigned his rights under the notes to Legal

27  Recovery, and (2) debtor Lombard Flats, LLC "is an alter ego of ENG and is liable jointly

28  and severally for ENG's debts." *Legal Recovery* Complaint ¶ 15. The facts pled in the

15

United States District Court
Northern District of California

1   *Legal Recovery* breach of contract complaint, giving rise to the alter ego claim against

2   debtor, predated the filing of the petition on August 3, 2009: (1) the three promissory

3   notes executed by Eng in favor of Cheuk Yan, plus the fourth promissory note in favor of

4   Mei Ling Fang, were dated between October 2007 and April 2008; (2) Eng formed debtor

5   Lombard Flats, LLC on or around December 22, 2008; transferred title of the property to

6   debtor on or around January 26, 2009; and allegedly caused liens and long term leases

7   to encumber the property pursuant to instruments recorded November 5, 2008, March

8   20, 2009, April 20, 2009, and January 31, 2012. *Legal Recovery* Complaint ¶ 14. Only

9   the allegations regarding the January 31, 2012 deed of trust post-date the petition, but as

10  appellant should be aware, the court has previously determined that the January 2012

11  instrument did not effect any transfer, fraudulent or otherwise. *Cheuk Tin Yan v.*

12  *Lombard Flats, LLC (In re Lombard Flats, LLC)*, No. 13-4735 PJH, doc. no. 8 at 18.

13        Because the factual allegations giving rise to debtor's alter ego liability all predate

14  the bankruptcy petition, Legal Recovery's alter ego claim against debtor was fairly

15  contemplated prepetition and is subject to the discharge injunction. "If a relationship

16  exists between the pre-petition conduct of the debtor and an *identifiable* potential

17  claimant, it typically follows that the parties can fairly contemplate the *possible* existence

18  of a claim against the debtor." *In re Hexcel Corp.*, 239 B.R. 564, 568 (N.D. Cal. 1999).

19  *See also In re Hurricane R.V. Park, Inc.*, 185 B.R. 610 (Bankr. D. Utah 1995)

20  (postdischarge tax liens filed against the Chapter 11 debtor as an alter ego of the

21  corporate debtor's vice president, based on prepetition debt, violated discharge

22  injunction).

23        Courts applying the "fair contemplation" test have held that a contingent claim for

24  an ordinary breach of contract "arises at the time of contracting, not at the time of a

25  subsequent breach." *In re Conseco, Inc.*, 330 B.R. 673, 686 (Bankr. S.D. Cal. 2005)

26  (distinguishing ordinary contracts, that were found by other courts to be within the fair

27  contemplation of parties, from insurance contracts that are generally considered

28  executory contracts, which receive special treatment in bankruptcy) (citations omitted). In

16

United States District Court
Northern District of California

1   *In re Russell,* the bankruptcy court applied the fair contemplation test to hold that a

2   breach of contract claim against debtors who sold real property before filing for

3   bankruptcy arose at the time of entering the contract, where the buyers alleged that the

4   seller-debtors had failed to disclose a soil subsidence problem that was not discovered

5   until several years after the bankruptcy filing. *In re Russell,* 193 B.R. 568, 568-69 (S.D.

6   Cal. 1996). In holding that the buyers' breach of contract claim was a prepetition claim

7   subject to the bankruptcy, the court in *Russell* reasoned, "It is within the fair

8   contemplation of parties entering into a contract that the other party may breach it, or

9   have made misrepresentations to induce the making of the contract. Thus, a contingent

10  claim arises at that point in time, although it may never mature." *Id.* at 571. *See also*

11  *Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.*, 266 B.R. 575, 582 (S.D.N.Y. 2001)

12  (affirming bankruptcy court's determination that contract-based claim arose at the time of

13  entering into the contract, and would have remained contingent until performance or

14  breach).

15      Here, Cheuk Yan's breach of contract claims based on Eng's nonpayment on the

16  promissory notes were fairly contemplated prepetition and are therefore barred, as no

17  proof of claims were timely filed and the confirmation of the plan discharged unsecured

18  debts and liabilities that arose preconfirmation. *See Zilog*, 450 F. 3d at 998-1001; 11

19  U.S.C. §§ 524(a)(2), 1141(d)(1). The alter ego claims asserted against debtor are based

20  on the prepetition breach of contract claims and are subject to the discharge injunction.

21      **3.   New Argument Raised in Motion for Reconsideration**

22      After the bankruptcy court issued an order granting debtor's second motion for an

23  order of contempt, appellant filed a motion for reconsideration which raised a new

24  argument that debtor's alter ego liability for the judgment against Eng could not have

25  been fairly contemplated before the claims bar date, and that the alter ego claim was not

26  subject to the discharge injunction. Citing *In re Conseco Life Ins. Co. Cost of Ins. Litig.*

27  *("Conseco Life")*, 2005 U.S. Dist. LEXIS 32375, 2005 WL 2203150 (C.D. Cal. Apr. 13,

28  2005), appellant argued that "there is no showing by debtor Lombard Flats, LLC that the

17

1   private lenders could have contemplated claims against the debtor on an alter ego theory

2   during its bankruptcy." *In re Lombard Flats*, doc. no. 191 (Bankr. N.D. Cal. Jan. 10,

3   2015). Appellant hinged the new fair contemplation argument on the January 31, 2012

4   deed of trust purportedly executed by debtor in favor of Eng and third parties. "The overt

5   indication of alter ego relationship between debtor and [Martin] Eng occurred when Eng

6   caused a deed of trust in the amount of $580,000 to be recorded [on January 31, 2012]

7   against property of debtor whereby Eng and numerous other entities controlled by Eng

8   were named as beneficiary. So even if lenders had instantaneous knowledge of this

9   recording of the deed of trust, it was after the closing of debtor's bankruptcy case. Thus

10  based on the 'fair contemplation test," lenders' claim of alter ego is not discharged by

11  debtor's bankruptcy." *Id.*   Appellant couched the newly asserted fair contemplation

12  theory as a challenge to the bankruptcy court's subject matter jurisdiction, which

13  appellant asserted could be raised at any stage of the litigation. *In re Lombard Flats*,

14  doc. no. 191 (Bankr. N.D. Cal. Jan. 10, 2015). The bankruptcy court clarified on the

15  record that the fair contemplation theory did not raise a question whether the bankruptcy

16  court had subject matter jurisdiction, but asserted a new argument on the motion for

17  reconsideration of the bankruptcy court's order of contempt. Feb. 13, 2015 Transcript at

18  10, *In re Lombard Flats*, doc. no. 244 (Bankr. N.D. Cal. Sept. 28, 2015).

19              a.    **No Ground for Reconsideration**

20         The bankruptcy court first determined whether appellant had met the standard for

21  reconsideration of the order granting debtor's second motion for an order of contempt.

22  "While Rule 59(e) permits the court to reconsider and amend a previous order, the rule

23  offers an 'extraordinary remedy, to be used sparingly in the interests of finality and

24  conservation of judicial resources.'" *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir.

25  2003) (quoting 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 59.30[4] (3d

26  ed. 2000)). "'[A] motion for reconsideration should not be granted, absent highly unusual

27  circumstances, unless the district court is presented with newly discovered evidence,

28  committed clear error, or if there is an intervening change in the controlling law.'" *Id.*

United States District Court
Northern District of California

18

1   (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

2   *See also McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (summarizing

3   four permissible grounds for Rule 59(e) motions: (1) to correct manifest errors of law or

4   fact; (2) to consider newly discovered evidence; (3) to prevent manifest injustice; or (4) as

5   justified by an intervening change in law). "A Rule 59(e) motion may not be used to raise

6   arguments or present evidence for the first time when they could reasonably have been

7   raised earlier in the litigation." *Id.*

8         Appellant did not dispute the bankruptcy court's assessment that he failed to

9   assert newly discovered evidence or intervening change in the law, but rather asserted

10   manifest injustice as grounds for reconsideration.  The bankruptcy court determined that

11   appellant raised a new argument that, under the fair contemplation doctrine, no alter ego

12   claim yet existed at the time that debtor was granted the discharge.  The bankruptcy

13   court noted that the 2012 trust deed was part of the record even in the first *Cheuk Yan*

14   fraudulent transfer action against debtor, which was held to be discharged.  Feb. 13,

15   2015 Transcript at 11-12, *In re Lombard Flats*, doc. no. 244 (Bankr. N.D. Cal. Sept. 28,

16   2015).  Appellant offered no cause for failing to raise this argument earlier, in opposition

17   to debtor's contempt motion, stating only that "I just want a ruling based on the *Conseco*

18   . . . case." *Id.* at 14.  Whether viewed under the clear error or manifest injustice test for

19   granting a motion for reconsideration, the bankruptcy court did not abuse its discretion in

20   denying the motion for reconsideration based on an argument that could reasonably have

21   been raised earlier in the proceedings.  *Kona*, 229 F.3d at 891.  Nevertheless, the

22   bankruptcy court proceeded to consider the merits of appellant's new argument that the

23   alter ego claim was not fairly contemplated prepetition.

24                    b.    **Fair Contemplation of Alter Ego Claim**

25         In seeking reconsideration of the contempt order, appellant argued that the

26   lenders on the notes could not have fairly contemplated an alter ego claim prepetition

27   because the overt indication of an alter ego relationship between debtor and Martin Eng

28   occurred around January 31, 2012, after the bankruptcy case was closed, when Eng

19

United States District Court
Northern District of California

United States District Court
Northern District of California

1    caused debtor to record a deed of trust in favor of Eng and third parties. Appellant relied

2    on the unpublished holding of *Conseco Life*, a class action for breach of contract brought

3    by insureds against defendant Conseco Life Insurance Company ("Conseco Life"), where

4    the court determined that the plaintiffs' alter ego claims based on postdischarge breaches

5    of contract were not fairly contemplated and were not barred by the bankruptcy discharge

6    of the defendant's parent company. *Conseco Life*, 2005 WL 2203150 at *8. The

7    bankruptcy court held that *Conseco Life* was not controlling authority and was

8    distinguishable from the alter ego claim at issue here, where the underlying conduct

9    giving rise to the breach of contract was Eng's failure to pay Cheuk Yan on the notes.

10   Feb. 13, 2015 Transcript at 15. The bankruptcy court reasoned, "In *Conseco*, the

11   underlying cause of action happened at a time virtually coinciding with the discharge and,

12   more importantly, under circumstances that the district court described, they're [sic]

13   simply people with insurance policies don't contemplate breaches of those policies.

14   People who hold promissory notes have to contemplate the possibility of breaches of the

15   note." Feb. 13, 2015 Transcript at 15-16.

16         The court affirms the bankruptcy court's ruling that the holding of *Conseco Life,*

17   which involved alter ego liability for breach of insurance policies, is not applicable to the

18   alter ego claim for the underlying breach of contract at issue here, which was fairly

19   contemplated prepetition. In *Conseco Life*, the plaintiffs were holders of life insurance

20   policies ("Lifestyle" and "Lifetime") issued by the defendant, Conseco Life, which was a

21   fourth-tier subsidiary of the debtor, Conseco, Inc. The parent company, Conseco, Inc.,

22   filed a petition for Chapter 11 bankruptcy in December 2002, and on September 9, 2003,

23   the bankruptcy court for the Northern District of Illinois entered a confirmation order

24   approving a plan of reorganization, triggering the discharge injunction.

25         The insurance policies at issue in *Conseco Life* applied a method of determining

26   the cost of insurance, called the "R-Factor," which was based on a multiplier accounting

27   for the insured's age, gender, and underwriting class, lowering the cost of insurance for

28   certain policyholders. Conseco Life notified its policy holders of a change in the cost of

20

United States District Court
Northern District of California

1   insurance effective October 2003 for "Lifestyle" policy holders, and May 2004 for

2   "Lifetime" policy holders. *Conseco Life*, 2005 WL 2203150 at \*2-3. The plaintiff policy

3   holders alleged that Conseco Life breached their insurance contracts when it eliminated

4   the "R-Factor" and significantly increased their cost of insurance payments. The

5   *Conseco Life* plaintiffs also alleged that the parent company, Conseco, Inc., was the alter

6   ego of Conseco Life and shared liability because after emerging from bankruptcy, it

7   directed the elimination of the "R-Factor" to enhance its balance sheet by hundreds of

8   millions of dollars. *Id.* at \*3. The parent company, Conseco, Inc., asserted the

9   bankruptcy discharge as an affirmative defense to the alter ego claims. The *Conseco*

10  *Life* plaintiffs filed a motion seeking an adjudication that the parent company's defense of

11  discharge was legally insufficient or waived on the ground that their claims arose after

12  entry of the bar order.

13      Recognizing that the alter ego doctrine does not create an independent cause of

14  action, but merely identifies which parties ought to be held liable, the district court noted

15  the lack of authority on the question whether alter ego allegations constitute a claim for

16  bankruptcy purposes under § 105, and proceeded to analyze the plaintiffs' underlying

17  breach of contract claims to determine when they arose for purposes of bankruptcy law.

18  *Conseco Life*, 2005 WL 2203150 at \*5. Applying the fair contemplation test set forth in *In*

19  *re Jensen,* the court in *Conseco Life* held that the plaintiffs could not have fairly

20  contemplated their claims against the parent company at the time of the bar order, given

21  that the subsidiary, Conseco Life, did not change its cost calculation methods for the

22  Lifestyle policies until three weeks after the bar order was issued, and another seven

23  months later for the Lifetime policies. *Id.* at \*7. Notably, the court in *Conseco Life*

24  distinguished *In re Russell*, *supra*, on the following grounds:

25          First, in contrast to the situation in *Russell*, Plaintiffs did not
            have a contractual relationship with the debtor, Old Conseco.
26          Instead, they had a contract with that debtor's fourth-tier
            subsidiary, Conseco Life. [¶]
27
            Second, the relationship that plaintiffs did have with Conseco
28          Life was not so direct, so intimate or so concrete as to make it

                                            21

1   likely that they would contemplate a breach merely because
    they were buying a life insurance policy.  When you buy real
2   property it is an inherent and recurring risk that the seller will
    fail to disclose a material condition.   When you buy life
3   insurance, in contrast, you do not contemplate that your
    coverage will vanish or your costs greatly multiply. [¶]

4   Third, *Russell* involved only pre-petition conduct of the debtor
    (failing to disclose a subsidence problem.)  Here, Plaintiffs
5   allege alter ego conduct that not only spans Old Conseco's
    bankruptcy proceedings, but also involves critical post-
6   confirmation conduct of [the reorganized entity] New Conseco
    (the elimination of the R-Factor through its allegedly controlled
7   subsidiary). [¶]

8   Fourth, unlike in *Russell*, Plaintiffs' claimed injuries were not
    caused by pre-petition conduct for which they had even
9   constructive notice.   According to the CAC [Consolidated
    Amended Complaint], Plaintiffs were never notified of the very
10  existence or use of the R-Factor until Conseco Life eliminated
    it.   The resulting increase in the cost of insurance did not
11  occur until after the Bankruptcy Court entered the Bar Order.

12  *Conseco Life*, 2005 WL 2203150 at *7 (citing *In re Russell*, 193 B.R. at 571-72).

13      For several of the reasons articulated by the court in *Conseco Life*, the alter ego

14  claims against debtor based on Eng's nonpayment of the promissory notes are

15  distinguishable from the alter ego liability for breach of the insurance policies asserted

16  against the debtor parent company in *Conseco Life*: the contractual relationship between

17  Eng, as the borrower on the promissory notes, and Cheuk Yan, as the lender, was "so

18  concrete as to make it likely that they would contemplate a breach;" Cheuk Yan's

19  underlying breach of contract claim, assigned to Legal Recovery, is based on prepetition

20  conduct, as appellant concedes; and Cheuk Yan's injuries caused by the breach were

21  caused by prepetition conduct, of which he had notice.

22      Under the reasoning of *Conseco Life,* the accrual of the alter ego claims is

23  determined by when the underlying breach of contract claims arose.  2005 WL 2203150

24  at *5. Even if the court were to consider when the alter ego relationship could be fairly

25  contemplated, the alter ego allegations in the *Legal Recovery* complaint refer to

26  prepetition conduct. As the court held earlier, the January 2012 purported deed of trust

27  had no legal effect in transferring a property interest from debtor to Eng, and does not

28  support appellant's argument that the alter ego theory arose after the discharge, or even

22

1   postpetition.  Thus, under the fair contemplation test for when a claim accrues under

2   bankruptcy law, the alter ego claims against debtor, which are based on the underlying

3   breach of contract claims against Eng, arose prepetition.

### c.   Lack of Notice

5   On his motion for reconsideration before the bankruptcy court, appellant argued

6   that even if the alter ego claim was fairly contemplated before the bar date, the alter ego

7   claim was not discharged because Cheuk Yan was not given formal notice of the

8   bankruptcy.  As appellant concedes in his reply brief on the present appeal, the issues

9   concerning lack of formal notice were decided in the court's order affirming the orders of

10  the bankruptcy court on the first contempt motion, which is on appeal before the Ninth

11  Circuit.  Doc. no. 11 at 1.  *Cheuk Tin Yan v. Lombard Flats, LLC (In re Lombard Flats,*

12  *LLC)*, No. 13-4735 PJH, doc. no. 8.  Though pending appeal, the court's earlier ruling that

13  appellant and his father were estopped from arguing lack of formal notice under the

14  judicial estoppel doctrine has issue preclusive effect on the same argument raised below.

15  "The federal rule on the preclusive effect of a judgment from which an appeal has been

16  taken is that the pendency of an appeal does not suspend the operation of an otherwise

17  final judgment for purposes of res judicata."  *Eichman v. Fotomat Corp.*, 759 F.2d 1434,

18  1439 (9th Cir. 1985) (citing 1B JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE

19  ¶ 0.416[3] at 521 (2d ed. 1983)).  *See also Convergence Corp. v. Videomedia*, 539 F.

20  Supp. 760, 762 (N.D. Cal. 1981) ("It is a well-established general rule [ ] that pendency of

21  an appeal does not suspend the operation of an otherwise final judgment as res judicata

22  or collateral estoppel.") (citing 1B MOORE'S FEDERAL PRACTICE ¶ 0.416[3]).  The

23  bankruptcy court did not, therefore, err in denying the motion for reconsideration on this

24  ground.

25  //

26  //

27

28

United States District Court
Northern District of California

23

1

## CONCLUSION

2   For the reasons set forth above, the court AFFIRMS the orders of the bankruptcy

3   court.

4   **IT IS SO ORDERED.**

5   Dated: March 23, 2016

6

7   PHYLLIS J. HAMILTON
United States District Judge

8

9

10

11

United States District Court
Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24